JOHN M. GENGA (SB# 125522)
JERL B. LEUTZ (SB# 253229)
GENGA & ASSOCIATES, P.C.
15260 Ventura Boulevard, Suite 1810
Sherman Oaks, California 91403
Telephone: (818) 444-4580
Facsimile: (818) 444-4585

Attorneys for Applicant
EARTHBOUND FILMS, LLC

JS-6

FILED
CLERK, U.S. DISTRICT COURT
AUG 20 2012
CENTRAL DISTRICT OF CALIFORNIA
BY               DEPUTY

LODGED
CLERK DISTRICT COURT
CENTRAL DIST. OF CALIF.
2012 JUL 10 PM 3:49
BY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EARTHBOUND FILMS, LLC, a Delaware limited liability company,

Applicant,

vs.

EURO TV SARL, a French limited liability company,

Respondent.

Case No.: CV12-5932 R (MANx)

[PROPOSED] JUDGMENT FOR APPLICANT EARTHBOUND FILMS, LLC

(Lodged Concurrently with: (i) Application to Confirm Arbitration Award; (ii) Declaration of John M. Genga; and (iii) Stipulation for Entry of Judgment)

[9 U.S.C. § 9]

DATE: August 20, 2012
TIME: 10 am
CTRM:          [Judge REAL]

TO ALL PERSONS:

Pursuant to (i) the Petition for Confirmation of Arbitration Award filed herein on July 10, 2012 ("Petition") by petitioner Earthbound Films, LLC ("Earthbound" or "Petitioner") against respondent Euro TV ("Euro TV" or "Respondent"), (ii) the Final Award issued on January 11, 2012 in that certain Arbitration No. 11-19 before the Independent Film & Television Alliance ("Award"), attached as Exhibit A hereto, and (iii) the parties' Stipulation for Entry of Judgment filed herein on July 10, 2012 ("Stipulation"):

1

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment shall and hereby does enter in accordance with the Award, in favor of Earthbound and against Euro TV, as follows:

1. As between Earthbound and Euro TV, Earthbound shall and does have all right, title and interest in and to that certain motion picture entitled *Earthbound*, also known as *A Little Bit of Heaven*.

2. Euro TV shall be and hereby is liable to pay Earthbound the sum of One Million Sixty-Nine Thousand Two Hundred Forty and 36/100 United States Dollars (US $1,069,240.36), together with simple interest thereon at the annual rate of 3.29594% from January 11, 2012 (the "Judgment").

3. Interest shall continue to accrue on the Judgment at the annual rate of 3.29594% from and after the date hereof.

4. Earthbound shall recover such attorneys' fees and costs reasonably incurred in connection with obtaining the Judgment as may be demonstrated to the satisfaction of the Court.

IT IS SO ORDERED, ADJUDGED AND DECREED.

DATED: 8-17- , 2012

_____
Judge, United States District Court

Presented by:

_____
John M. Genga
GENGA & ASSOCIATES, P.C.
Attorneys for Petitioner
EARTHBOUND FILMS, LLC

**Exhibit A**

**Independent ■**
**Film & Television**
**■ ■ ■ Alliance**
**Arbitration®**

10850 Wilshire Boulevard / 9th Floor
Los Angeles, CA 90024-4321
310-446-1000 TEL / 310-446-1600 FAX
www.ifta-online.org / info@ifta-online.org

January 11, 2012

John M. Genga, Esq.
Genga & Associates, P.C.
15260 Ventura Boulevard, Suite 1810
Sherman Oaks, CA 91403
       Via email: jgenga@gengalaw.com and certified mail

Scott L. Baker, Esq.
Baker & Associates
1875 Century Park East, Suite 1490
Los Angeles, CA 90067
       Via email: slb@bakerslaw.com and certified mail

Re:    Arbitration #11-19 – Earthbound Films, LLC v. Euro TV

Gentlepersons:

In accordance with Paragraph 12.3 of the applicable IFTA Rules for International Arbitration, enclosed is a fully executed Final Award rendered in this matter.

This Award is being forwarded to the Parties via email, with an original to follow via USPS certified mail. If you would like to receive the Award via courier, please provide IFTA with your courier account number no later than close of business day from the date of this letter.

Sincerely,
IFTA

*Richonda Starkey*
Richonda Starkey
Arbitral Agent

enclosures by certified mail

cc:    Michael C. Donaldson, Esq., Arbitrator – 310-277-4870 w/o attachments
       Kim Tommaselli, Senior Counsel, IFTA
       Susan Cleary, Vice President & General Counsel, IFTA

## DECLARATION OF SERVICE

I, Richonda Starkey, declare as follows:

I act as Arbitral Agent for IFTA Arbitration in Los Angeles, California. I am over the age of eighteen years of age and am not a party to this action. IFTA's address is 10850 Wilshire Boulevard, 9th Floor, Los Angeles, CA 90024. On January 11, 2012, I served the **Final Award** on the interested parties as follows:

☒     **BY REGISTERED AND/OR CERTIFIED MAIL:** I placed a true copy in a sealed envelope addressed the party/ies indicated at the address(es) below. The envelope is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party serviced, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day after date of deposit for mailing in affidavit.

☐     **BY COURIER/OVERNIGHT SERVICE:** I caused DHL Express or Federal Express to deliver a true copy of the aforementioned document(s) in a sealed envelope with airbill addressed to the party/ies indicated at the address(es) shown below.

☐     **BY FACSIMILE:** I caused the aforementioned document to be transmitted by facsimile machine to the parties and numbers indicated below. The transmissions were reported as complete, and no errors were reported by the facsimile machine. Copies of the transmission records are maintained by our office.

☐     **BY PERSONAL SERVICE:** I caused Express Group, Inc. to hand deliver a true copy of the aforementioned document(s) in a sealed envelope addressed to each person(s) named at the address(es) shown below.

☒     **BY ELECTRONIC MAIL (.PDF FORMAT):** I caused a true copy of the aforementioned document(s) to be sent via e-mail (.pdf format) to the interested party/ies at the e-mail address/es indicated below.

Executed on January 11, 2012 at Los Angeles, California.

☒     **I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

*(signature)*
**RICHONDA STARKEY**
**Arbitral Agent**
**IFTA Arbitration**

## SERVICE LIST

**IFTA Arbitration #11-19**
**Earthbound Films, LLC v. Euro TV**

John M. Genga, Esq.
Genga & Associates, P.C.
15260 Ventura Boulevard, Suite 1810
Sherman Oaks, CA  91403

jgenga@gengalaw.com

Scott L. Baker, Esq.
Baker & Associates
1875 Century Park East, Suite 1490
Los Angeles, CA  90067

slb@bakerslaw.com

MICHAEL C. DONALDSON, ESQ. (SBN 40767)
LAW OFFICES OF DONALDSON & CALLIF
400 South Beverly Drive, Suite 400
Beverly Hills, CA 90212
Tel:   (310) 277-8394
Fax:   (310) 277-4870
Email: michael@donaldsoncallif.com

ARBITRATOR

# ARBITRATION BEFORE
# INDEPENDENT FILM AND TELEVISION ALLIANCE

**In The Matter Of Arbitration Between**

Earthbound Films, LLC, Claimant,

vs.

EuroTV, Respondent,

and

EuroTV, Counter Claimant,

vs.

Earthbound Films, LLC, Counter Respondent.

ARBITRATION NO. 11-19

FINAL AWARD

This Arbitration is between the licensor, Earthbound Films, LLC on the one hand and the licensee, EuroTV on the other hand, with regard to the contract dated May 21, 2010 and signed by Daniel R. Stutz, authorized signatory for Earthbound Films, LLC and by Stephane Berrebi, CEO of EuroTV including its various attachments ("the "Agreement") concerning the licensing of French distribution rights of the picture entitled *Earthbound* (the Picture).

////

## HEARING

The Arbitration Hearing commenced at 10:00 a.m. on Friday, October 7, 2011 and concluded at approximately 3:00 p.m. Present throughout the hearing were Scott Baker, counsel for Respondent and Counter-Claimant; Stephane Berrebi (via telephone), CEO of EuroTV; Neil Sacker, representing Claimant; Mark Gill, witness for Claimant; Incoronata Pagliuca ("Inc"), witness for Claimant; and Michael C. Donaldson, Arbitrator.

Over the course of the hearing, testimony was taken from Stephane Berrebi, CEO of EuroTV, on behalf of Respondents (by phone from France); Mark Gill, President of Millennium Films, on behalf of Claimant; and Inc Pagliuca, on behalf of Claimant.

After the hearing, John M. Genga, Esq. took over represention of Claimant for purposes of post-arbitration briefing.

## JURISDICTION

Jurisdiction is established in the Agreement on page 5 paragraph 11B:

> ... Each of the parties hereto agree that any dispute under this agreement... shall be resolved by final and binding arbitration under the Rules International Arbitration of the IFTA in effect as of the date the request for arbitration is filed (the "Rules") ... The parties agree that each will abide by the decision rendered in such arbitration and that any court having jurisdiction may enforce such decision. Each of the parties hereby submits to the exclusive jurisdiction of the courts of the Forum in all matters relating to such arbitration...

## EXHIBITS:

The following Exhibits were admitted into evidence.

Exhibit 1:   Email Correspondence between Inc Pagliuca and Eurotv dated April 1, 2011;

Exhibit 2:   Email Correspondence between Inc Pagliuca and Stephane Berrebi dated February 9, 2011;

Exhibit 3:   Email Correspondence between Mark Gill, Inc Pagliuca, and Stephane Berrebi (at two email addresses) (and copied to "Anne", Neil Sacker, Bernd, Dan Stutz, David Glasser, and Olivier Albou) dated July 29, 2010;

| | | |
|---|---|---|
| Exhibit 4: | Email Correspondence between "Anne" and Mark Gill (and copied to Inc Pagliuca, Berrebi, Sacker, Bernd, Stutz, Glassser, Albou, and Jean-Francois Klein) dated July 30, 2010; |
| Exhibit 5: | Email Correspondence between "Anne" and Inc Pagliuca dated June 23, 2010; |
| Exhibit 6: | Email Correspondence between EuroTV and Anne dated April 4, 2011; |
| Exhibit 7: | Email Correspondence between Inc Pagliuca, Anne, and Stephane Berrebi dated April 2, 2011; |
| Exhibit 8: | Letter Agreement dated April 30, 2010; |
| Exhibit 9: | Second Letter Agreement dated May 20, 2010; |
| Exhibit 10: | Third Letter Agreement dated June 2, 2010; |
| Exhibit 11: | "Notice of Arbitration" and dated June 29, 2011. |

**THE ARBITRATOR MAKES THE FOLLOWING FINDINGS OF FACT:**

The following facts were stipulated by all parties to be true and correct:

1. The Distribution Agreement, including its various attachments, (the Agreement) which was attached to the Notice of Arbitration and was dated May 21, 2010 is a true and correct copy of the Agreement signed by the parties with regard to the Picture.

2. Pursuant to the terms of the Agreement, EuroTV agreed to pay a minimum of $1,300,000 for various specified rights in the Picture, payable 20% ($260,000) upon signing of the Agreement and 80% ($1,040,000) within thirty (30) days after receiving a Notice of Delivery from Claimant.

3. EuroTV paid $260,000, and is not in default with regard thereto.

4. Claimant issued the Notice of Delivery in conformance with the Agreement on or about October 29, 2010.

5. EuroTV has not paid the balance of $1,040,000 or any part thereof.

6. Payment of the balance is a condition precedent under the terms of the Agreement.

7. None of the rights in the Picture, as more specifically set forth in the Agreement, have been transferred from Claimant to EuroTV.

Additionally, Arbitrator found the following facts:

8. In various emails and conversations, EuroTV promised to pay the balance, including *inter alia*, an email dated April 1, 2011.

9. Various email exchanges between Mr. Berrebi and Earthbound regarding payments did not mention a U.S. theatrical release.

10. Payment of the balance was due November 28, 2010.

11. Payment of the balance (as set forth in fact 6) is a condition precedent only to the grant of rights to EuroTV.

12. The Agreement stated at paragraph 15.2 of the Standard Terms that Earthbound "may proceed... for available relief, including canceling this Agreement.... suspending Delivery of the affected Picture.... and declaring all unpaid amounts.... Immediately due and payable."

13. At the time that the parties negotiated the Agreement, EuroTV was in default of a prior agreement with Earthbound Films for the distribution rights to "Law Abiding Citizen" ("LAC").

14. Earthbound Films' principals knew that EuroTV was experiencing severe economic pressure because EuroTV had made various promises to pay for LAC and had missed all such deadlines.

15. EuroTV entered into contracts to distribute LAC in France and would be in breach of those contracts if EuroTV was not able to obtain distribution rights to LAC. Eartthbound Films was aware of this fact.

16. EuroTV was not able to meet any of the financial arrangements that would have been satisfactory to Earthbound.

17. As a final measure, to help EuroTV avoid default on its LAC agreements, Earthbound proposed that it would renegotiate the LAC distribution contract with EuroTV if EuroTV would

enter into a distribution agreement for the motion picture entitled, *Earthbound* (the "Picture"). This occurred at a meeting in Cannes, France during the Marche de Film in May of 2010.

18. The President of EuroTV took the script and the cast list of the Picture with him when he left the meeting, read it, and a day or two later told Earthbound that he liked the script and was satisfied with the casting, and would agree to buy the Picture.

19. During discussions over such an arrangement, US theatrical release was discussed. Earthbound was hoping for a wide release. No distributor had agreed to release the Picture in the U.S. at the time.

20. At least two companies were discussed as possible distributors for the Picture: The Weinstein Company and The Film Department. Weinstein was known to EuroTV as a recognized U.S. distributor of theatrical films.

21. Reference to a potential wide release took place as a part of discussions in two separate meetings, on or about May 13, 2010 and a few days thereafter for follow-up, in the suite of Earthbound's sales agent Weinstein Global Film Corp. at the Noga Hilton Hotel in Cannes, France.

22. If a commitment regarding the theatrical release of a film is a part of the consideration in a foreign sales agreement, it would be considered a material term and included in the agreement to purchase the film. No such provision exists in the Agreement.

23. The Agreement contained the following provision in paragraph 21.6: "This Agreement contains the entire understanding of the Parties regarding its subject matter. It supersedes all previous written or oral negotiations, deal memos, understandings or representations between the Parties, if any. Each Party expressly waives any right to rely on such negotiations, understandings or representations, if any."

24. On May 20, 2010, EuroTV executed a letter agreement renegotiating the LAC distribution agreement to include a term that EuroTV agreed to execute the Earthbound Agreement.

25. It was usual for Earthbound Films to prepare a short form agreement prior to preparing a long form, final distribution agreement, but that was not done in regard to the Earthbound Agreement because they already had a fully negotiated agreement for LAC which could be used for the Picture.

26. The contracted price for the Picture in the Agreement is a total of $1,300,000.

27. The only estimate of the current value of the Picture is $50-60,000 U.S.

28. The sale price of the Picture to EuroTV for French rights was in line with the sale price of the Picture to other buyers in other territories, specifically the U.K. and Germany.

29. Provisions for interest calculations are discussed in the Agreement in paragraph 9.9, as follows: "Any payment not made when due will, in addition to any other right or remedy of Licensor, incur a finance charge at the lesser of three base points over the 3-month London Inter Bank Offered Rate (LIBOR+3) on the date payment was due or the highest applicable legal contract rate. This finance charge will accrue from the date the payment was due until it is paid in full."

30. Interest is calculated from November 28, 2010 to December 28, 2011 at the LIBOR rate dated November 29, 2010 of 0.29594% + 3%, as follows:

$1,040,000.00 x 3.29594% = $34,277.78 per annum

$34,277.78 / 365 = $93.91 per day

396 days (inclusive) x $93.91 = $37,188.36

31. The Agreement contained the following provisions:

5. Rights Granted....

A. **Cinematic Rights:**

| | Licensed | Holdback |
|---|---|---|
| Theatrical | [X] Yes [ ] No | See Release Requirements Language in Par. 6. |
| Non-Theatrical | [X] Yes [ ] No | Until _*_ months from First Theatrical Release |
| Public Video | [X] Yes [ ] No | Until _*_ months from First Theatrical Release |

*Licensee shall release no earlier than Day and Date with the Initial U.S. Release

### B. Ancillary Rights:

|  | Licensed | Holdback |
|---|---|---|
| Airline | [ ]Yes [X]No | Until N/A months from Initial U.S. Release |
| Ship | [ ]Yes [X]No | Until N/A months from Initial U.S. Release |
| Hotel | [X]Yes [ ]No | Until_3_months from Initial U.S. Release |

### C. Video Rights:

|  | Licensed | Holdback |
|---|---|---|
| Home Video | [X]Yes | Until_**_months from Initial Theatrical Release in the Territory |
| Commercial | [X]Yes | Until_**_months from Initial Theatrical Release in the Territory |
| Video Sell-thru | [X]Yes | Until_**_months from Initial Theatrical Release in the Territory |
| Mail-order | [X]Yes | Until_**_months from Initial Theatrical Release in the Territory |

** *Licensee shall release no earlier than: (i) 6 months following Initial Theatrical Release in the Territory, or (ii) Day and Date with the Initial Release in the U.S.*

### D. Television Rights:

|  | Licensed | Holdback |
|---|---|---|

<u>Pay-per-View TV</u>

| Terrestrial | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |
|---|---|---|
| Cable | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |
| Satellite | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |
| Video On Demand | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |
| Catch Up TV: | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |
| SVOD | [X]Yes [ ]No | Until_6_months from Initial Theatrical Release in Territory |

(Provided Licensee acknowledges SVOD rights are frozen in the Territory during the Term.)

<u>Pay TV</u>

| Terrestrial | [X]Yes [ ]No Until_9_months from Initial Theatrical Release in Territory |
|---|---|

| | | |
|---|---|---|
| Cable | | [X ]Yes [ ]No Until_9_months from Initial Theatrical Release in Territory |
| Satellite | | [X ]Yes [ ]No Until_9_months from Initial Theatrical Release in Territory |

Free TV

| | | |
|---|---|---|
| Terrestrial | | [X ]Yes [ ]NoUntil_15_months from Initial Theatrical Release in Territory |
| Cable | | [X ]Yes [ ]NoUntil_15_months from Initial Theatrical Release in Territory |
| Satellite | | [X ]Yes [ ]NoUntil_15_months from Initial Theatrical Release in Territory |

....

**6. Release Requirements:** With respect to the Theatrical Release in the Territory, Licensee may release the Picture on the earlier of (i) Day and Date with the U.S. Release and (ii) (9) months from Notice to Licensee stating that the materials from which commercially acceptable release prints of the Picture can be manufactured (at Licensee's cost) are available (the "NOD"). License may not exploit any Licensed Right before the end of its applicable Holdback Period. Once determined, Licensee shall provide Licensor with all release dates for the Picture in the Territory.

In the event the US Distributor requires a longer holdback of any of the Licensed Rights in the Territory, than those set forth in Section 5 hereof, then Licensee shall comply with any such longer holdback.

32. The communications between the parties and their behavior at all relevant times were in preparation for a release of the Picture in the French territories as soon as the final payment was made by EuroTV to Earthbound, without any consideration of whether there had been or had not been a U.S. theatrical release.

33. From the date EuroTV entered the Agreement to the date of the Arbitration Hearing, Earthbound has made no effort to sell the French distribution rights in the Picture to any buyer other than EuroTV.

34. The total Arbitrator's fee is $11,970. The parties have paid a total of $8,000, leaving a balance of $3,970.

DISCUSSION:

Counsel for Respondent and Cross-Complainant Euro-TV has tried valiantly to raise defenses from the factual ashes of this case. The facts simply don't support any theory of law or common sense that would justify a finding that payment is not due to Earthbound Films. The most ludicrous defense is, of course, that Earthbound has not been damaged by Euro-TV's inability to meet its financial obligations under the Agreement. Euro-TV's CEO provided cogent testimony as to exactly how badly Earthbound has been damaged. Each proffered defense will be briefly discussed in the order in which they appear in the Response. Each one fails for the reasons set forth below.

1. No actual damages because the rights never transferred to EuroTV. The logic is baffling. Claimant had a signed contract for $1.3 million, received $260,000, and is left with a film that EuroTV's CEO says is today worth between $50,000 and $60,000. Of course, the Claimant has been damaged. Yes, Earthbound still has the French rights, but- according to Respondent- those rights have little value today.

2. Payment of the full amount is a condition precedent, so the contract is not valid. The problem is that EuroTV is reading the condition precedent too broadly. The condition precedent is very narrow and only prescribes the transfer in rights. It is not a condition precedent to the validity of the contract itself. However, the fact that the rights did not transfer does not mean that the rights were available for sale by Earthbound or that the promise of EuroTV to pay the balance of $1,040,000.00 was not valid and enforceable.

3. Failure to mitigate. Obviously, Earthbound might have made inquiries of other French clients at any time during their unsuccessful efforts to collect the balance due under the Agreement. But why would they? Any such effort would trigger a requirement to clean up the chain of title. And why should they? During most of this time, EuroTV kept giving assurances that the full contract amount would be paid. EuroTV was a recognized buyer. Earthbound had other business with them. Earthbound had no incentive -- and several disincentives -- to re-selling this film while they still had an enforceable contract

with a buyer who kept promising to pay. As a legal matter, the obligation to mitigate cannot arise prior to a point in time when one has a legal right to mitigate. It is this award that gives Earthbound such a right. At best, the duty to mitigate might have been triggered at the point in time when EuroTV abandoned its position that final payment would be made. EuroTV seems to be asking the Arbitrator to completely ignore its promises of payment which were made in spite of the fact that EuroTV wanted Earthbound to detrimentally rely on those very same promises at the time they were made. Perhaps there was a point in time when the hopelessness of the situation was sufficiently clear that the duty to mitigate was triggered, much like the landlord whose tenant actually moves out of an apartment. The record is devoid of exactly when that earlier date might have been. However, Claimant still has the rights and can market them.

4. Interestingly, Earthbound did not offer any evidence of reductions against such estimate such as cost of sales, commissions, markets, and the like. Any figures used to reduce the gross amount estimated by Respondent would be speculation by the Arbitrator. The record is inadequate to reduce the estimate to a present value. Therefore, the only supportable conclusion is to reduce the damages by the low estimate of its present day value.

5. Awarding Money Damages is Impermissible because it amounts to specific performance. Two cases were cited in support of this proposition. Neither apply. Here, the Agreement is clear. Its terms will be enforced.

6. Duress because if EuroTV had not purchased the Picture it would have lost the rights to LAC. This argument turns the facts on their head in order to create the impression of duress. EuroTV was going to lose the rights to LAC (along with a million dollars in deposit money.) EuroTV was not able to put a financial solution on the table that would satisfy Earthbound. It is undisputed that the possibility of purchasing the Picture only arose after all other methods of EuroTV meeting its obligations regarding LAC had

failed. Selling anything of value to a customer who may not be able to pay for it is always a shaky proposition. The offer to sell the Picture to EuroTV was a last ditch attempt to help EuroTV save LAC. It was not something that was forced on EuroTV by Earthbound. The deal was only consummated after EuroTV read and liked the script, and approved of the cast. The price was a fair market price at the time.

6. Fraud based on preliminary mention of a wide release. This fails for three reasons. First, there is the integration clause noted above at Finding of Fact #23. It states clearly that EuroTV is not relying on any such statements. Second, is the practice of both sides to spell out such essential terms when they are part of the deal. The lack of such clause indicates that there was no such agreement. Third- and possibly most importantly- the vagueness of the conversation as reported by EuroTV's CEO who wasn't sure who made the comments, reported that no P&A commitment was part of the conversation and there was no attached distributor. He mentioned two possible distributors which confirms that no distributor (and perforce, no distribution) was in place when the Agreement was signed.

**THE ARBITRATOR REACHES THE FOLLOWING CONCLUSIONS OF LAW:**

1. The Agreement constitutes a valid contract.
2. Earthbound did not induce EuroTV's consent to the Agreement by fraud and there was no mistake of fact at the time of execution of the Agreement.
3. Earthbound did not induce EuroTV's consent to the Agreement by duress or undue influence. Earthbound did no wrongful act.
4. There was no failure of any "Condition Precedent" to EuroTV's obligation to pay.
5. Earthbound suffered and is entitled to recover damages in the amount of the unpaid balance ($1,040,000.00) less $50,000 present value of the film.
6. Earthbound is entitled to interest on damages and recovery of its costs and reasonable attorneys' fees.

7.    Interest is calculated from November 28, 2010 to December 28, 2011 at the LIBOR rate on November 29, 2010 of 0.29594% + 3%, amounting to $37,188.36.

**IT IS ORDERED that:**

1.    EuroTV shall pay Earthbound damages of $1,040,000, plus interest of $37,188.36 less $50,000; attorneys' fees of $20,332; costs of $8,750; IFTA fees of $5,000; paid Arbitrator fees of $4,000 plus the additional $3,970 Earthbound must pay for a total of $1,069,240.36.

2.    All distribution rights in French speaking territories remain the property of Earthbound.

3.    Claimant is ordered to pay the balance of $3,970 owed to the Arbitrator forthwith.

4.    EuroTV shall recover nothing on its counterclaims.

**IT IS SO ORDERED.**

DATED: January 6, 2012

_____
MICHAEL C. DONALDSON
Arbitrator